[Civ. No. 1054. Third Appellate District.—March 6, 1913.]

## VIRGINIA E. WILSON, Respondent, v. W. J. HOTCH-KISS, Appellant.

STATUTE OF FRAUDS—SALE OF CORPORATE STOCK—PAROL EVIDENCE.—In an action to recover the purchase price of corporate stock, parol evidence is admissible to show that the stock was already in the possession of the buyer as pledgee, that there was an oral agreement of sale, and that it has been carried out in part.

ID.—CHANGE OF POSSESSION WHEN BUYER ALREADY HOLDS STOCK AS PLEDGEE.—Where the buyer is thus in possession of the stock as bailee or otherwise, manual tradition is not necessary, but delivery and acceptance are deemed to have been constructively accomplished; and where the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding, the actual transfer of the stock or its symbol is not necessary.

ID.—QUESTION FOR THE JURY.—Whether such a change has taken place is a question for the jury; and the intention of the buyer to accept the stock pursuant to the agreement is also for the jury.

ID.—EVIDENCE—QUESTIONS TO WITNESSES PROPERLY EXCLUDED.—In such action questions to the defendant: "Have you ever asked to have the stock transferred on the books" of the company? And have "you at any time treated this stock otherwise than as security?" are properly excluded.

ID.—INSTRUCTIONS AS TO STATUTE OF FRAUDS—FAILURE TO GIVE.—In an action for the purchase price of corporate stock which was sold under an oral agreement while in the possession of the buyer as pledgee, it is prejudicial error to refuse to give instructions offered by the defendant relative to the statute of frauds and to omit to give any instruction on that point.

ID.—INSTRUCTIONS APPLICABLE TO ORAL TRANSFER OF STOCK.—The following instructions correctly state the principle which govern such a case: where there is no writing showing the terms of a sale, and the alleged price exceeds two hundred dollars, and no part of the price is paid, it is necessary, in order that the agreement be valid, that the buyer accept or receive part of the thing sold, or part of the evidences thereof; to satisfy the statute of frauds there must be a delivery by the seller, with an intention of vesting the right of possession in the buyer, and there must be an actual acceptance or receipt by the buyer, with the intention of taking possession as owner; where personal property alleged to have been sold is already in the possession of the buyer at the time of the alleged sale, while it is not necessary for the seller to retake the property and redeliver it to the buyer, yet it is necessary that there be evidence to show the equivalent of a receipt or acceptance, and this must be in addition to the oral evidence of the agreement of sale; and plaintiff must show that the conduct of the buyer in dealing with the property already in his possession was inconsistent with the supposition that the former possession of the property by the buyer continued unchanged.

ID.—DELIVERY AND ACCEPTANCE—INTENTION OF PARTIES.—Whether the statute is to be read as found in section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure, or as in section 1739 of the Civil Code, neither receipt nor acceptance nor both receipt and acceptance can avail unless there be a delivery of the goods with the intention to vest the right of possession in the vendee and an actual acceptance by the latter with the intention to take possession as the owner.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Titus, Creed & Dall, for Appellant.

Franklin P. Bull, for Respondent.

CHIPMAN, P. J.—The complaint alleges that plaintiff's assignor, F. B. Wilson, was, on and prior to October 1, 1907, the owner of one thousand shares of the capital stock of the Star Lumber Company, a corporation; that prior to said date said F. B. Wilson had indorsed said shares in blank and as so indorsed had delivered the same to defendant by way

of pledge thereof as security for the payment of the indebtedness of said F. B. Wilson to defendant who continued to hold said pledge until said date, "on which day, and while said defendant still had in his possession said certificate, in the manner and for the purposes aforesaid, said F. B. Wilson sold to said defendant, and said defendant purchased from said F. B. Wilson, said shares of said stock and said defendant agreed to pay therefor to said F. B. Wilson the sum of four thousand four hundred and twenty-one and 90/100 dollars ($4,421.90) the following day." Assignment of the cause of action to plaintiff is alleged; and nonpayment both before and after assignment. Defendant interposed a general and special demurrer which was overruled and he answered, denying that he purchased said shares or agreed to pay said or any sum therefor and pleaded the statute of frauds, to wit, that the alleged sale was for an amount exceeding two hundred dollars and no memorandum thereof was put in writing, "subscribed by said defendant or his agent, nor did the said defendant ever accept or receive any part of the thing sold, nor of any of the evidences thereof, nor did said defendant at the time of sale, or at any time, pay any part of the price stipulated in said alleged agreement."

Defendant, further answering, set up certain facts as constituting a counterclaim but, as no point is made in the briefs respecting such issue, the facts thus alleged need not be stated.

The cause was tried by a jury and the plaintiff had the verdict on which judgment was entered. Defendant appeals from the judgment and from the order denying his motion for a new trial on bill of exceptions.

The questions presented arise on the rulings of the court on the testimony offered and on its refusal to give certain instructions requested by defendant.

It appears that, on or about October 7, 1907, plaintiff's assignor, F. B. Wilson, had a one-third interest in the Star Lumber Company, represented by one thousand shares of its capital stock. Certificates had been issued to him but were at that time in the possession of defendant, indorsed by Wilson, to secure certain of his indebtedness to defendant and to secure him in case he should have to pay certain obligations on which defendant and Wilson and one Roy Mc-

Pike were jointly and severally liable. Among these obligations was a note for thirty thousand dollars in favor of the Western National Bank. All these obligations of Wilson were incurred by him in purchasing the property which was subsequently deeded by Wilson, McPike, and defendant to the Star Lumber Company.

Witness F. B. Wilson, plaintiff's assignor, testified to the foregoing facts. He was asked to state the conversation between himself and defendant in regard to the purchase of said shares by defendant from Wilson. Defendant objected on the ground that if it tended to show a sale of the stock of value in excess of two hundred dollars, the law required the contract to be in writing. The objection was overruled subject to a motion to strike out the answer. The witness testified: "Mr. Hotchkiss said he would buy my stock in the Star Lumber Company for the amount I had invested with six per cent interest from the time of investment to date, and would assume all of my obligations at the time, incurred through the purchase of the property and my connection with the Star Lumber Company. He said he would pay me four thousand four hundred and twenty-one and 90/100 dollars ($4,421.90) the next day. We sat down and figured out how much that amounted to; it came to four thousand four hundred and twenty-one and 90/100 dollars ($4,421.90). I said, 'As long as you are going to buy me out, as long as the stock is in your name, you have got the stock, the stock is in your hands and there is nothing much for you to do but to give me a check.' Mr. Hotchkiss said he would give me a check but for me to get my personal account fixed up. I did this and when I returned he stated it was a little late in the afternoon, he wanted to catch a boat, and if I would call the next day he would give me a check for the whole amount. When I called the next day to get my check he asked me if I was in any hurry for it, and asked me to stay in the office and look after the affairs of the Star Lumber Company until he could get somebody else to run the business. I told him I would be as lenient with him as I possibly could, and he agreed to give me personally one hundred dollars ($100) a month more than I had been receiving while I was interested in the company and had charge at the mill. I received no writing showing this agreement or amount due."

, At this point a motion was made and denied to strike out all the testimony relating to the conversation "on the ground that its evident intent was to prove an oral contract for the sale of personal property for a price in excess of $200.00 and there was no evidence of the delivery or acceptance or receipt of the property subsequent to the alleged transaction."

The witness concluded his testimony as follows: "I stayed with the Star Lumber Company about two months after that conversation, at the request of the defendant, and during that time, he paid me the extra $100.00 a month; during that time I asked him repeatedly for the check for the amount I have mentioned, but he put me off from time to time and finally, on January 15th, 1908, refused to pay me."

Witness McFaul, without objection, testified as follows: "Early in October, 1907, I had a conversation with the defendant regarding Mr. Wilson's connection with the Star Lumber Company, in which conversation defendant said to me that he had bought Mr. Wilson out."

Witness Rowe testified as follows: "In the year 1907 I was engaged in the lumber business. In the fore part of October of that year, I had a conversation with the defendant in my lumber yard regarding a shipment of lumber I had received from the Star Lumber Company. The defendant said that every shipment I would receive of lumber would come in better shape, would have more system to it, as he had bought out Mr. Wilson, his partner. A few days later, in the office of the defendant, I had another conversation with him. I saw Mr. Wilson around the office of the Star Lumber Company, and I said to Mr. Hotchkiss, 'I thought you had bought out Wilson,' and he said, 'I have bought out Wilson but he is just helping around the office for a short time.' "

Defendant Hotchkiss testified in his own behalf. He flatly denied making the purchase or of having the conversation testified to by Wilson, but did not deny having made the statements testified to by the witnesses McFaul and Rowe. He testified that he had paid the obligations referred to by Wilson and that Wilson had never contributed anything toward the payment.

The conflict in the testimony was resolved by the jury in favor of the plaintiff and we cannot disturb its conclusions on the facts.

The objection to the testimony of plaintiff's witness, Wilson, seems to have been based on the ground that the conversation called for would not be admissible unless the oral agreement showed that it came within certain exceptions, stated in the statute. It was competent to prove the agreement by parol for the statute does not invalidate the sale of personal property "for a price of two hundred dollars or more," where: . . . "2. The buyer accepts *and* receives part of the things sold, or when it consists of a thing in action, part of the evidences thereof, or some of them," as provided in section 1739 of the Civil Code, or as provided in subdivision 4, section 1624, of the same code, "unless the buyer accepts. *or* receives part of such goods and chattels or the evidences, or some of them, of such things in action, or pays at the time some part of the purchase money."

The facts must necessarily rest in parol or the agreement could not be proved at all if not in writing, nor could it be known whether it fell within the exceptions mentioned in the statute. The ruling was not error for, while the testimony of the witness may not of itself have been sufficient to bring the transaction within the statute, it was admissible as a step toward that end. It went clearly to the point of establishing a sale and purchase by parol. (*March* v. *Hyde*, 69 Mass. (3 Gray), 331.) The evidence was that, after the sale Wilson remained with the company for two months at an advance in his compensation which was part of the agreement, and that subsequent to the sale defendant stated to witnesses McFaul and Rowe that he had bought out Wilson and, as Wilson had ceased to be manager and defendant had taken upon himself the control of the company, the business would run along more satisfactorily. Cases have frequently occurred where the buyer, at the time of the purchase by him, was in possession of the property, as bailee or otherwise. In such a case manual tradition is not necessary for it is not required that the buyer should redeliver the property to the seller and the seller then deliver it back to the buyer, but delivery and acceptance are deemed to have been constructively accomplished and, where the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding, the actual transfer of the goods or their symbol is not necessary. Whether such a change

has taken place is a question for the jury on the evidence. (Browne on Statute of Frauds, secs. 318a, 319b; *Garfield* v. *Paris*, 94 U. S. 557, [24 L. Ed. 821].) "The facts of acceptance and receipt being questions of fact for the jury, circumstances of the slightest probative force may properly be submitted to them (the jury) for that purpose." (Browne on Statute of Frauds, sec. 321; Benjamin on Sales, 7th Am. Ed., sec. 173.) Defendant cites *Dorsey* v. *Pike*, 50 Hun, 534, [3 N. Y. Supp. 730], where it was held that the mere fact that the property was in the possession of the buyer at the time of making the contract furnished no evidence of acceptance in its support; "but there must be some act or conduct on the part of the buyer in respect of the property which manifests an intention to accept it pursuant to, or in performance of, the contract of sale and purchase which the parties have sought to make; and where the evidence is such as to warrant that conclusion, the question is usually one of fact for the jury."

It appears from defendant's testimony that he paid the obligations of Wilson—the thirty thousand dollar note—on March 1, 1907, and the other notes as they fell due, which, with the exception of a note for three thousand dollars falling due April 19, 1909, was nearly two years before the amended complaint herein was filed. Defendant did not testify that he had ever called upon Wilson for contribution, though he testified that Wilson never contributed anything toward payment of these obligations.

We think there were such acts and conduct on the part of defendant in respect of the property as tended to show an intention to accept it pursuant to the agreement testified to by Wilson and sufficient to go to the jury under proper instructions.

When defendant was on the witness-stand he was asked by counsel: "Have you ever asked to have the stock transferred on the books of the Star Lumber Company?" Again: "I will ask you whether you at any time treated this stock otherwise than as security for the indebtedness which you claim to be owing from Mr. Wilson to you?" These questions were objected to as irrelevant, incompetent, and immaterial and the objection was sustained. The first question, if answered in the negative, would have tended but slightly

if at all to show that he had not received and accepted the property as purchaser and would not have been in rebuttal of evidence of acceptance. It was at most but a negative fact. The second question called for an opinion rather than for any fact. He testified without objection that he had never voted or attempted to vote the stock at any stockholders' meeting nor had he ever attempted to sell it.

It has been held by our supreme court that the denial of a contract is sufficient to raise the question of its sufficiency under the statute of frauds. (*Feeney* v. *Howard*, 79 Cal. 525, [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984].)

However this may be, the answer in this case distinctly raised the issue that the alleged contract was oral and could only be sustained by proof such as the statute of frauds declares to be necessary to bring the contract within its terms; that the testimony of Wilson that he sold the stock to defendant and that defendant purchased it on the conditions testified to by Wilson was not in itself sufficient to meet the requirements of the statute but that there must be some facts or circumstances, in addition to and apart from the oral agreement, tending to show that the stock was received and accepted by defendant with the intention of purchasing it or, that, being then in his possession, he retained it after the oral agreement was entered into in the capacity of purchaser and not as pledgee, in which latter capacity he first received it. While such additional evidence may be slight, and its probative force is for the jury to determine, as we have seen, still it was necessary and the testimony of McFaul and Rowe was obviously introduced by plaintiff to supply this additional evidence.

In view of this issue defendant offered instructions for the purpose of enlightening the jury as to the law governing such transactions as this and to inform them under what circumstances an oral agreement to purchase personal property of the value of two hundred dollars is deemed valid. Defendant, as a witness, testified that he did not purchase the stock, but that he held it only as a pledge and he testified that the conversation in relation to the stock testified to by Wilson never occurred. This sharp conflict in the testimony of Wilson and defendant is referred to by the court in its

instructions and the jury were instructed as to their power to deal with it.

Defendant offered six different instructions in an unsuccessful attempt to have placed before the jury the principles embodied in the statute of frauds. The court refused to give any of them and gave no instructions of its own on the subject. On the contrary, its instructions left the jury to treat the case as though no such law as the statute of frauds existed, and that the sole issue they were to determine was whether Wilson or defendant was to be believed. The court, having reference to the testimony given by Wilson and by defendant, instructed the jury as follows: "As the counsel for both parties have informed you, this is a case where the testimony of the respective parties is absolutely contradictory, and consequently, as it has been very justly said, you will have to accept the statement of one party or of the other, just as the statement of one or the other may or may not commend itself to your judgment as being a credible statement."

After stating some rules by which the credibility of a witness may be determined and after stating what Wilson claimed as to the sale and what defendant claimed, and giving the rule as to the preponderance of the evidence, the court said: "Therefore, if you are satisfied, from the preponderance of the evidence, that this stock was sold by the plaintiff (meaning plaintiff's assignor) to the defendant at the time and in the manner and at the price mentioned (by Wilson, for no other witness testified as to these facts), then it will be your duty to so find." Referring to defendant's claim of offset, assuming that he agreed to purchase the stock, the court told the jury: "Now, if you should find that the defendant did purchase this stock of the plaintiff's assignor as related by Mr. Wilson, then you will inquire whether or not Mr. Wilson was at that time indebted to the defendant in a sum of money equal to or greater than the amount of the purchase price." Again: "If you should find that no such indebtedness existed, and that the sale was in fact made as stated by Mr. Wilson, then it will be your duty to find a verdict in favor of the plaintiff." Again: "If you should find that Wilson was not indebted to him (defendant) . . . and that such sale was actually made, upon the terms and conditions stated by Mr. Wilson, then it will be your duty to find a verdict in favor of

plaintiff.'' The case thus went to the jury under instructions which permitted them to find for the plaintiff on the testimony of the seller alone. It was held, in *Dauphiny* v. *Red Pole etc. Co.,* 123 Cal. 548, [56 Pac. 451], that, under section 1739 of the Civil Code, ''in order to supply the place of a writing, acceptance and receipt are necessary to show the complete consent of the vendee to the existence of the contract. Acceptance and receipt are both necessary. 'The acceptance must be clear and unequivocal.' (Citing Benjamin on Sales, sec. 144, where the cases are collected.) To constitute a delivery and acceptance of goods such as the statute requires, something more than mere words of contract, unaccompanied by any act, is necessary.'' (Smith on the Law of Fraud, sec. 379; *Schindler* v. *Houston,* 1 N. Y. 261, [49 Am. Dec. 316].) In the case cited, Bronson, J., is quoted as saying, in *Bailey* v. *Ogden,* 3 Johns. (N. Y.) 421, [3 Am. Dec. 509]: ''To hold otherwise would be repealing the statute. There may be a delivery without handling the property, or changing its position. But that is only where the seller does an act by which he relinquishes his dominion over the property and puts it in the power of the buyer.''

It must be true that the mere narrative by Wilson of what was said by him and defendant at the time the sale was made, cannot of itself be sufficient to make the sale valid. It was said, in *Marsh* v. *Hyde,* 69 Mass. (3 Gray) 331: ''The great purpose of the enactments, commonly known as the statute of frauds, is to guard against the commission of perjury in the proof of certain contracts. This is effected by providing that mere parol proof of such contracts shall be insufficient to establish them in a court of justice. . . . The verbal agreement of parties must be proved. The statute does not prohibit verbal contracts. On the contrary, it presupposes that the terms of the contract rest in parol proof, and only requires, in addition to the proof of such verbal agreement, evidence of a delivery or part payment under it. It does not, therefore, change the nature of the evidence to be offered in support of the contract. It merely renders it necessary for the party claiming under it to show an additional fact in order to make it 'good and valid' ''; ex. gr., delivery or receipt and acceptance. The question of fact here which, as is contended, brought the sale within the statute, was whether

21 Cal. App.—26

the declarations of defendant to McFaul and Rowe and his acts and conduct contemporaneous and subsequent to the sale were sufficient. But the jury were not told that they were involved or were necessary to be shown or had any relation to the case. What conclusion the jury would have reached had the law been given them it is not possible to say. It is at least reasonably possible that they would have doubted the sufficiency of the evidence to show an intention on defendant's part to change the pledge into complete ownership of the stock.

Defendant requested the following instructions which were refused:

"1. Where there is no writing showing the terms of a sale, and the alleged price exceeds two hundred dollars, and no part of the price is paid, it is necessary, in order that the agreement be valid, that the buyer accept or receive part of the thing sold, or part of the evidences thereof."

"2. Oral testimony of the making of the contract is not alone sufficient to take the contract out of the statute of frauds, or to make it valid. Facts additional to the making of the bargain must be proved by plaintiff to show the equivalent of receipt or acceptance."

"3. Mere words are not sufficient to prove a receipt or acceptance of the personal property to take an oral contract of the sale of personal property for a price exceeding $200 out of the statute of frauds. The acts of the parties proved must be of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer."

"4. To satisfy the statute of frauds there must be a delivery by the seller, with an intention of vesting the right of possession in the buyer, and there must be an actual acceptance or receipt by the buyer, with the intention of taking possession as owner. This rule can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intention of the parties."

"5. Where personal property alleged to have been sold is already in the possesssion of the buyer at the time of the alleged sale, while it is not necessary for the seller to retake the property and redeliver it to the buyer, yet it is necessary that there be evidence to show the equivalent of a receipt or

acceptance, and this must be in addition to the oral evidence of the agreement of sale.''

''6. Plaintiff must show that the conduct of the buyer in dealing with the property already in his possession was inconsistent with the supposition that the former possession of the property by the buyer continued unchanged.''

Respondent's principal objection to these instructions is that most of them state that the buyer must either accept *or* receive part of the thing sold, whereas, in section 1739 of the Civil Code, the language is—the buyer must accept *and* receive part of the thing sold. In point of fact the instructions follow the language of section 1624 of the Civil Code, as amended in 1874 (Stats. 1874 (Code Am.), p. 241) and as amended in 1878 (Stats. 1878 (Code Am.), p. 86). Subdivision 4, section 1973 of the Code of Civil Procedure, reads the same as subdivision 4, section 1624 of the Civil Code. The codifiers say, in their note to section 1973 of the Code of Civil Procedure, of the amendment of that section in 1907 (Stats. 1907, p. 563) : ''The amendment consists in adding subdivisions 6 and 7 thereto, and correcting the language thereof so as to make it conform absolutely to what is in *the statute of frauds, as set forth in section 1624 of the Civil Code.*'' Why the terms used in section 1624 of the Civil Code, and section 1973 of the Code of Civil Procedure, are in the disjunctive—''accepts *or* receives''—and in section 1739 of the Civil Code, in the conjunctive—''accepts *and* receives'' —is not explained. Certain it is that section 1739 has not been changed since 1874 (Code Am. 1873–4, p. 243) and that the latest legislative expression is in the disjunctive, and the instructions followed the language found in the latest enactments on the subject.

Mr. Story says: ''The words 'accept and actually receive' are understood to mean a final and absolute appropriation by the purchaser, either of the whole article sold, or part thereof.'' (Story on Sales, sec. 276.)

Mr. Justice Blackburn observes: ''The question of acceptance or not is a question as to what was the intention of the buyer, as signified by his outward act. The receipt of a part of the goods is the taking possession of them. Where the seller gives to the buyer the actual control of the goods, and the buyer accepts such control, he has actually received them.

such a receipt is often the evidence of an acceptance, but it is not the same thing; indeed, the receipt by the buyer may be, and often is, for the express purpose of seeing whether he will accept or not." (Blackburn on Sales, pp. 22, 23.)

"When the goods at the time of the sale are in the possession of the vendee, it may be difficult to prove the receipt; but if it can be shown that the vendee has done acts not consistent with the supposition that his former possession remained unchanged, these acts may be proved, and it is a question of fact for the jury whether the acts were done because the purchaser had taken to the goods as owner." (Note to Annotated Civil Code, sec. 1739. Citing Benjamin on Sales, p. 126.)

Whether the statute is to be read as found in section 1624 of the Civil Code, and section 1973 of the Code of Civil Procedure, or as in section 1739 of the Civil Code, neither receipt nor acceptance nor both receipt and acceptance can avail unless there be a delivery of the goods with the intention to vest the right of possession in the vendee and an actual acceptance by the latter with the intention to take possession as the owner.

Defendant's instruction number 1 correctly states the principle which should govern and instruction number 4 states what is necessary to constitute delivery and acceptance. Instructions 5 and 6 recognize the principle that while it is not necessary for the seller to retake the property and redeliver it to the buyer, it is necessary to show receipt or acceptance by the conduct of the buyer which was inconsistent with the supposition that the former possession of the property by the buyer continued unchanged.

We think it was error to refuse all of defendant's instructions and to submit the case to the jury without any instructions relating to the statute of frauds.

The judgment and order are reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 5, 1913.