Argued October 2, affirmed October 22, 1918.

# BROWN *v.* SHEEDY.

(175 Pac. 613.)

**Frauds, Statute of—Acceptance and Receipt of Property—Evidence.**

1. In replevin for possession of 87 head of cattle, plaintiff's title depending upon oral contract of sale, testimony *held* insufficient to show acceptance and receipt of property, or some part thereof, so as to satisfy the statute of frauds as to oral contract of sale of property at a price not less than $50.

> [As to acceptance and delivery of goods to satisfy statute of frauds, see notes in 49 Am. Dec. 325; 37 Am. Rep. 16; 96 Am. St. Rep. 215.]

**Trial—Motion for Nonsuit.**

2. A motion for judgment of nonsuit concedes the truth of every statement made in the evidence for plaintiff.

**Frauds, Statute of—Questions for jury.**

3. When there is a dispute as to the facts, it must be solved by a verdict of a jury; but when the facts in relation to a contract of sale alleged to be within the statute of frauds are not in dispute, it belongs to the court to determine their legal effect.

**Frauds, Statute of—Performance of Contract—Change of Possession.**

4. Under statute of frauds as to sale of personalty for $50 or more, a verbal transaction is not complete or binding without some physical act sufficient to indicate to an observer a change of property in the chattel involved.

**Replevin—Title and Right to Possession.**

5. To maintain replevin, plaintiff must show title and right to possession.

**Sales—Title—Executory Contract.**

6. Title does not pass while contract of sale is executory.

**Sales—Breach of Executory Contract—Remedy.**

7. The remedy for breach of executory contract of sale is an action for damages, not replevin.

**Sales—Executory Contract.**

8. Where money for cattle was to be paid at time of delivery, payment and delivery were concurrent conditions, performance of which was necessary to make contract fully executed.

From Benton: GEORGE F. SKIPWORTH, Judge.

Department 1.

This is an action in replevin to recover possession of eighty-seven head of cattle which the plaintiff alleges the defendant wrongfully detains from him in Benton County, Oregon, to his damage in the sum of $1,000, the value being laid in the sum of $4,410.

The answer traverses all the allegations of the complaint except that the defendant has refused to deliver the cattle. The defendant pleads ownership in himself and the right of possession. On information and belief, he further avers that the plaintiff claims title to the animals by virtue of an alleged contract of sale which the defendant denies and charges in substance that if there were such a contract, it is void because it was not embodied in any writing expressing a consideration and subscribed by the defendant or his lawfully authorized agent; that if any agreement existed, it was for the sale of personal property at a price of more than $50, and that the plaintiff did not, neither did anyone for him, accept or receive any part of the property or pay at the time any part of the purchase money.

All the new matter of the answer was denied by the reply. At the close of the testimony for the plaintiff, the court sustained the defendant's motion for judgment of nonsuit, on the ground that the plaintiff had not proved a case sufficient to be submitted to the jury. The plaintiff appeals.    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Weatherford & Weatherford, Mr. George W. Denman* and *Mr. Henry L. Heil,* with an oral argument by *Mr. James K. Weatherford.*

For respondent there was a brief over the names of *Mr. E. D. Horgan* and *Messrs. McFadden & Clarke,* with an oral argument by *Mr. Arthur Clarke.*

BURNETT, J.—1. The plaintiff's brother acted as his agent and went to the home of the defendant to buy some cattle. He looked over one band the defendant had at what was called the Magee place, and some others at his home place, and without closing the deal at that time left the place and went to look at some more of the defendant's cattle on Mary's River. When asked what occurred after he returned, he answered:

"I just rode back to the place and he [referring to the defendant] walked out of the stable door just as I came along, with a pitchfork in his hand, and I says, 'Sheedy, I wouldn't have a hoof of those cattle on the river.' I says, 'We will just be confined to the cattle right here on the ground.' I says, 'I can just take forty head of those cows, seventeen out of the cattle at the Magee place and the other twenty-three out of this bunch.' He says, 'All right, you can have them cattle.' Just that way."

Speaking about his previous examination of the cattle, he said:

"I walked through amongst them and I says, 'I will take this cow and that cow and that cow,' just pointing them out to him."

He said also that he was to give the defendant $50 a head for the cows and $30 each for the yearlings. He was to take the yearlings as they stood. Asked what arrangements he made with Sheedy about taking care of the cattle, he said:

"Those cattle were to be taken the same care of, and fed just the same and at the same places, put in the shed, those calves or yearlings, until the next Monday, the fifth, I think it was the fifth, anyway it was Monday. I was to go and receive those cattle right there and pay for them."

He asked Sheedy to do that and he said he would. He further narrated as follows:

"I offered him a thousand dollars and he said he didn't want any money. He said Lee Brown had money enough to buy and sell us both, and I told him I had rather give him the money and then he would know what he had done, but he didn't want it."

The following also appears in his direct examination:

"Q. Mr. Brown, what did Mr. Sheedy say with reference to parting with title to the cattle?
"A. He said they were my cattle.
"Q. What did you say?
"A. I told him all right, and we set a day for me to come and take the cattle away, and I was there to take them away, too, with the money."

This witness gave other evidence to the effect that on the following Monday he and the plaintiff went together to Sheedy's farm, demanded the cattle and offered to pay for them, but defendant refused to take the money or deliver the cattle. Testimony also appears for the plaintiff respecting the value of the stock.

On cross-examination the witness testifies thus:

"Q. How long was it after you selected those cows before you bargained with him?
"A. I suppose it was about an hour.
"Q. Did you bargain?
"A. Yes. Just time for me to ride from Sheedy's over to Marysville and back over to his place.
"Q. Then you told him you would be back a week from Monday and take the cattle and pay for them?
"A. Yes, sir."

On redirect examination on this point, his testimony runs thus:

"Q. Clarke was asking you about the receipt of these cattle. When did you receive them?

"A. The twenty-seventh of January, the day I was there."

The testimony of the plaintiff himself refers simply to the occurrence of the following Monday when the defendant, as admitted by his answer, refused to deliver the cattle. The cattle were not segregated from the larger herds and were in no way disturbed in their usual custody.

The Oregon statute of frauds so far as applicable to the case at hand reads thus:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law:— * * (5) An agreement for the sale of personal property at a price not less than $50, unless the buyer accept and receive some part of such personal property, or pay at the time some part of the purchase money."

2, 3. The motion for judgment of nonsuit concedes the truth of every statement made in the evidence for the plaintiff and is in the nature of a demurrer to the evidence. It is true that when there is a dispute as to the facts it must be solved by a verdict of a jury, but as said by Elliott on Contracts, Volume 2, section 1340:

"When the facts in relation to a contract of sale alleged to be within the statute are not in dispute, it belongs to the court to determine their legal effect."

The crux of the controversy is for the court to determine whether there was a delivery of the cattle by the defendant, for without delivery there can be neither

receipt nor acceptance, and whether the plaintiff accepted and received the property or any part thereof.

The rule is thus laid down by Mr. Justice Lord in *Galvin* v. *MacKenzie,* 21 Or. 184, 186 (27 Pac. 1039):

"To constitute an acceptance within the meaning of this provision, the purchaser must so deal with the property as to prove that he acknowledges the existence of the contract. There must be some act on his part plainly recognizing the existence of the contract and that the property has been received in accordance therewith. The property must be completely transferred, which includes both delivery by the vendor and acceptance by the vendee. There must be delivery of the goods by the vendor with an intention of vesting the right of possession in the vendee, and there must be an actual receiving and acceptance by the latter with the intention of taking possession as owner."

Again, says Mr. Chief Justice Bean, in *Reynolds* v. *Scriber,* 41 Or. 407, 410 (69 Pac. 48):

"To constitute a part performance, however, within the meaning of this rule, the acts relied upon for that purpose must have reference to the contract, and clearly appear to have been done solely with a view to its performance. Acts merely preliminary or ancillary to the agreement, such as delivering an abstract of title, giving directions for a conveyance, the preparation of the agreement, making valuations, and other like acts, are not sufficient. Whatever was done must have been done under the contract, and in part performance of its terms, and should tend to show not only that there had been an agreement, but throw some light upon its nature, so that neither the fact of the contract nor its execution rests solely upon parol evidence."

The principle is thus stated in *Beedy* v. *Brayman Co.,* 108 Me. 200 (79 Atl. 721, Ann. Cas. 1913B, 273, 36 L. R. A. (N. S.) 76):

"There may be a complete delivery at common law without either receipt or acceptance under the statute.

The former is the act of the vendor; while receipt, which affects the possession, and acceptance, which affects the title, are the acts of the purchaser, and both receipt and acceptance are essential. Nor can such receipt and acceptance be shown by words alone, where such words are part of the alleged oral bargain and sale. But receipt and acceptance need not be contemporaneous with the alleged contract, if made in pursuance of it; nor need they be simultaneous. The former may precede or follow the latter. No act of the vendor alone can be effective to make delivery, without receipt and acceptance, and take the case out of the statute. If the vendee does any act to the goods, of wrong if he be not their owner, and of right, if he be their owner, the doing of the act is evidence that he had accepted them.''

In *Wilson* v. *Hotchkiss,* 21 Cal. App. 392 (132 Pac. 88, 93), the judgment of the trial court was reversed for its refusal to give the following instructions:

''Mere words are not sufficient to prove a receipt or · acceptance of the personal property to take an oral contract of the sale of personal property for a price exceeding $200 out of the statute of frauds. The acts of the parties proved must be of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer.

''To satisfy the statute of frauds there must be a delivery by the seller, with an intention of vesting the right of possession in the buyer, and there must be an actual acceptance or receipt by the buyer, with the intention of taking possession as owner. This rule can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intention of the parties.''

In *Devine* v. *Warner,* 75 Conn. 375 (53 Atl. 782, 96 Am. St. Rep. 211, 228), a paragraph of the syllabus reads thus:

''An acceptance of goods, sold under an oral contract of sale, to satisfy the statute of frauds requires

more, by way of proof of receipt and acceptance, than mere words, indicative merely of the parties' assent to the agreement of sale, and it is not enough to satisfy the condition of acceptance that the title to the goods has merely become vested in the purchaser."

The annotator to the opinion in the American State Reports appends this matter:

"There must always be an unconditional acceptance of the goods purchased by the buyer under a verbal contract of sale in order to satisfy the requirements of the statute of frauds. In other words, to constitute a sufficient delivery under an oral agreement for the sale of personal property, the property must be placed within the control, and under the exclusive dominion of the buyer: *Marsh* v. *Rouse,* 44 N. Y. 643. The acceptance and receipt of merchandise under an oral contract of sale sufficient to satisfy such statute, must be such a transfer of the physical possession of the property as places the goods beyond the control of the vendor and within the control of the vendee. Such transfer is not accomplished, where, under such contract, the goods are left in the possession and control of the vendor, pending the taking of an inventory by him to determine the price to be paid for the goods: *Brunswick Grocery Co.* v. *Lamar,* 116 Ga. 1 [42 S. E. 366]. To make a verbal sale of chattels valid under the statute of frauds delivery must be made, the vendee must take actual possession, that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be continuous, not taken to be surrendered back, not formal but substantial. * * To constitute a delivery and acceptance of goods, such as the statute of frauds requires under a verbal contract of sale, something more than mere words is necessary. Superadded to the language of the contract and the declarations of the parties there must be some act of theirs amounting to a transfer of the possession and an acceptance thereof by the buyer and the case of cumbrous articles is not an exception to this rule

(citing authorities). Mere words alone, unaccompanied by acts, cannot make out a delivery and acceptance of goods, because a delivery of goods to take a contract of sale out of the statute of frauds, must be of such a nature that the property is placed under the control and power of the vendee, and the acts, to change the possession of the property from the vendor to the vendee, must be such as to deprive the vendor of his right of lien as security for the payment of the purchase money."

In addition to the precedents noted in his brief, counsel for the plaintiff pressed upon our attention at the hearing the case of *Smith & Son* v. *Bloom,* 159 Iowa, 592 (141 N. W. 32), as authority sustaining his contention. There the plaintiff sought to recover damages for breach of a parol contract for the sale of some sheep, and the defense was based on the statute of frauds. Premising that the Iowa statute forbids oral testimony only when "no part of the property is delivered," we note that the facts there involved were substantially that the sheep were in the possession of the plaintiffs in a pen assigned to their use in the Union Stockyards at South Omaha when the defendant applied to them to buy the animals. At his request and in his presence they were taken out of that pen to the stockyard scales where the defendant gave his name to the weighmaster as purchaser. They were weighed by the servant of the Stockyards Company over whom the plaintiffs had no authority, and then with the assent of the defendant they were driven into another pen entirely out of the control of the plaintiffs and subject to the order of the defendant. The essence of the decision is that all this was sufficient to take the case to the jury in satisfaction of the Iowa statute requiring delivery only without reference to receipt or acceptance. It will be observed also that

the testimony disclosed positive acts of the parties and not mere words alone.

4. The object of our statute was to prevent frauds and perjuries. It was sought to accomplish this purpose by requiring something more than spoken words as evidence in certain instances, one of which is the sale of personalty for $50 or more. The verbal transaction is not complete or binding without some physical act sufficient to indicate to an observer a change of property in the chattel involved. To hold otherwise would be to emasculate the statute and invite invasions of its requirements. In the instant case the testimony narrates much that was said, but it discloses no act of the defendant whatever and none performed by the plaintiff but what might have been done by anyone looking at the cattle without intending to assert ownership of them or being in the least guilty of any wrong to the owner, within the meaning of the rule laid down in *Beedy* v. *Brayman Co.*, 108 Me. 200 (79 Atl. 721, Ann. Cas. 1913B, 273, 36 L. R. A. (N. S.) 76). As narrated by the witness for the plaintiff, nothing occurred at the Sheedy farm when he was bargaining for the cattle that would have indicated in the least to any locker-on, who heard nothing, that any change of control of the animals had occurred.

The terms of the statute are cogent in declaring that the agreement is void unless it is in writing, properly ·subscribed. This is the rule. The exception is found in the language, "unless the buyer accept and receive some part of the personal property, or pay at the time some part of the purchase money." As a condition precedent to being allowed to prove his case by oral testimony it was required of the plaintiff that he establish the performance of a corporeal act which, inde-

pendent of the mere words uttered at the time, clearly indicated that he accepted and received the property or some part thereof. As a matter of law the testimony fails to establish any such condition.

5-8. Again, the success of the plaintiff in this action of replevin depends upon his showing title and right to the possession of the cattle. Title does not pass while yet the contract is executory. The remedy at law for the breach of such an agreement is an action for damages. Specific performance of it cannot be worked out by replevin. It is not pretended but that the money for the animals was to be paid at the time of their delivery. In such a transaction, in order to make the contract fully executed, payment of the money and delivery of the chattels are concurrent conditions to be accomplished simultaneously and until so carried out either party can revoke the contract, if otherwise valid under the statute, subject only to an action to recover damages for its breach. In any view of the case, therefore, the plaintiff failed to establish either title or right to possession of the cattle. The judgment of nonsuit was the only conclusion legally to be derived from the case made by the plaintiff. It is affirmed.                    AFFIRMED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.