ROY STEBBINS v. FRIEND, CROSBY & COMPANY.
FRANK KROM v. SAME.[1]

February 15, 1935.

Nos. 29,654, 29,655.

[1]Reported in 258 N. W. 824.

447

See 178 Minn. 549, 228 N. W. 150; 184 Minn. 177, 238 N. W. 57; 185 Minn. 336, 241 N. W. 315; 191 Minn. 561, 254 N. W. 818; 192 Minn. 520, 257 N. W. 812.

Oppenheimer, Dickson, Hodgson, Brown & Donnelly and George W. Jansen, for appellants.

E. E. Eder and L. G. Fassett, Jr., for respondent.

Holt, Justice.

After verdicts for plaintiffs, the two actions being tried as one, defendant moved in the alternative for judgment notwithstanding the verdicts or a new trial. The court ordered judgment notwithstanding the verdicts, and plaintiffs appeal from the order.

The contract in each suit related to feeding certain lambs for the market. Each plaintiff claimed he performed his part of the con-

448

tract and delivered the lambs to defendant on February 26, 1921. These actions were begun on February 23, 1927. On technicalities they came to this court three times before there was a trial on the merits and once since. They are here now for the fifth time, not counting the opinion on motion to strike the settled case, reported in 192 Minn. 520, 257 N. W. 812. (Stebbins v. Friend, Crosby & Co. 178 Minn. 549, 228 N. W. 150; *Id.* 184 Minn. 177, 238 N. W. 57; *Id.* 185 Minn. 336, 241 N. W. 315; *Id.* 191 Minn. 561, 254 N. W. 818.) Since the two cases were tried as one, and the written contracts are exactly alike except as to the number of lambs each plaintiff agreed to feed, and the pleadings are identical save as to the number of animals and the resulting difference in the balance due, we shall refer to only one plaintiff hereinafter, meaning the plaintiff Stebbins. The contract purports to have been entered into November 3, 1920, between plaintiff and defendant. Defendant was in business at South St. Paul. Plaintiff owned a ranch near Billings, Montana, the nearest railroad station being Yegan, Montana. Plaintiff undertook to receive from defendant at Spokane "about 2,060 lambs to feed, care for and furnish hay, grain and grounds and all equipment facilities, labor and attention from about November 10, 1920, and ending February 10 to February 15, 1921," and to be redelivered to defendant at Yegan on or before February 10 to 15, 1921. These further provisions of the contract are important: As compensation for said labor, care, feed, and privileges defendant was to pay plaintiff in full of all demands at the point and time of redelivery 2½ cents per pound for the original weight of said lambs, at the time plaintiff received them, and 12½ cents per pound on all gain in weight made during the feeding period, and defendant was to pay down one dollar per head on the purchase price, and the balance to be paid by plaintiff, said balance so paid by plaintiff to be repaid without interest by defendant on the redelivery of the lambs. Defendant was to pay the freight on the lambs from Spokane to Yegan and stand death loss in shipment. Plaintiff alleged the making of the contract, that he fully performed and redelivered the lambs to defendant on February 26, 1921, at Yegan, and that there was a stated amount due and un-

paid. The answer admitted the contract, denied performance by plaintiff, pleaded the statute of limitations, denied that there was an extension of the contract to February 26, 1921, and averred that, if such there were, it was without consideration and void under 2 Mason Minn. St. 1927, § 8379, that the contract had been transferred to a bank, and plaintiff had no right to sue thereon, and finally that the cause of action had been settled.

Defendant objected to the reception of any evidence and moved for a directed verdict at the close of the trial. Plaintiff Stebbins had a verdict for $20,169.21 and plaintiff Krom for $10,423.53, and the jury answered three special interrogatories favorably to plaintiff. The first was that pursuant to instructions from defendant the lambs were delivered to defendant or ·its agent authorized by it to accept delivery at Yegan, Montana, on February 26, 1921; the second, that the O'Donnell $18,000 promissory note was not accepted in settlement and adjustment of the contract; and, third, that the bank involved did not retain the O'Donnell $28,000 notes owing defendant in full settlement and adjustment of the amount owing by defendant by reason of its contract with plaintiff.

The court in granting defendant judgment notwithstanding the verdicts based the order solely upon the ground that there had been no redelivery of the lambs to defendant—thus necessarily holding that the evidence did not support the jury's special verdict that they were delivered to defendant, or its agent authorized by defendant to accept delivery at Yegan, Montana, on February 26, 1921. In this conclusion we think the learned trial court erred. The court relied on Brown v. Sheedy, 90 Or. 74, 175 P. 613, and St. Paul Motor Vehicle Co. v. Johnston, 127 Minn. 443, 149 N. W. 667. The first case was an action in replevin for certain cattle which the plaintiff alleged he owned. The defendant answered, denying the plaintiff's title and averred that the plaintiff claimed under an oral contract of purchase from the defendant, void under the statute of frauds. Of course, since there had been no delivery of the cattle and no payment of the purchase price, the title had not passed from the defendant and the action failed. In the case at bar the jury found from evidence amply justifying the finding

that on February 26, 1921, defendant accepted delivery of the lambs, fed under the contract, at Yegan, Montana, that it did so by William Rea of Rea Bros., directed by defendant to do so. The case of St. Paul Motor Vehicle Co. v. Johnston, 127 Minn. 443, 149 N. W. 667, is not helpful. The action was dismissed upon the opening statement of the plaintiff's counsel that he could not recover upon the cause of action stated in the complaint—*indebitatus assumpsit*—but that he intended to prove damages for breach of an executory contract.

This was not a simple contract to buy a number of lambs. It was in fact a feeding contract. It is so described in the signed instrument. From the terms thereof and the surrounding circumstances it is plain that defendant desired to purchase lambs near Spokane in the fall of 1920 and fatten them near Billings, Montana, where he could get some ranchmen, near Yegan, Montana, to keep and care for them on their ranches so as to fit them for the market about the middle of the following February. Plaintiff was desirous of furnishing the feed and doing the work. Evidently defendant did not have the necessary funds to buy the lambs, nor could plaintiff furnish it the money. So the Merchants National Bank at Billings, Montana, near Yegan, was to loan the money needed for the enterprise. To carry the purpose of these parties into effect the so-called feeding contract was so drawn that the title to the lambs purchased would be placed in plaintiff in order that he might obtain the money needed in the venture from the bank and secure the loan by a chattel mortgage on the lambs and give the contract as collateral. The lambs were obtained, the loan was made to pay for them, all as contemplated by the contract. The lambs were fed and cared for on plaintiff's ranch up to February 15, 1921. There is no suggestion in the evidence that plaintiff failed in any particular fully and completely to perform his part of the contract. It only remained for defendant to be at Yegan on February 15 to pay the amount called for by the contract and receive the lambs. It could not raise the money. The market was unfavorable. It desired delay. Plaintiff accommodated defendant until the 26th of February, when the jury found it weighed and

accepted the lambs at Yegan, the shipping point. Plaintiff could waive prepayment. No written agreement extending the feeding beyond the 15th was necessary. Even a written contract for the sale of merchandise may be extended by parol and without consideration. Bemis Bros. Bag Co. v. Nesbitt, 183 Minn. 577, 237 N. W. 586, and cases there cited. As bearing on the issue of redelivery of the lambs to defendant after full performance of plaintiff of the feeding contract, the jury and the court had a right to consider whose was the duty and obligation under the contract to take possession of the lambs when they were weighed and delivered by plaintiff at Yegan on February 26. Plaintiff had fully performed. Surely it was defendant's duty to receive the lambs. Plaintiff's assistance in the shipment of the lambs and the bank's aid and insistence that the proceeds of the shipment be applied upon its loan should not be construed as indicative of a refusal of redelivery. Mr. J. H. Crosby, who acted for defendant and was one of its managing officers, recognized that the loss on the venture, that is, if the lambs could not be sold for enough to pay plaintiff the amount called for by the contract, would fall on defendant. In fact, he never contended that plaintiff had not fully and satisfactorily performed. Nor could he well deny that defendant had accepted redelivery, for he diverted and controlled the shipment and its disposal by commission men selected by him. Of course both defendant and plaintiff knew of the bank's claim, and all the parties were desirous that the highest market price should be obtained and that all thereof should be applied upon the bank loan. How the shipping bills were made or how the commission men accounted for the proceeds of the lambs is not of great significance, for as between plaintiff, defendant, and the bank each knew that the lambs when loaded for shipment at Yegan, Montana, on February 26, 1921, were the property of defendant, which, when marketed, should go to the bank until its loan was paid, and if there was any balance it should go to plaintiff until he received what the contract called for; the remainder, if any, would belong to defendant. Looking at the evidence in the light of whose duty it was to accept

the lambs on February 26, there can be no reasonable contention that the special finding lacks support.

Even though the court below erred in concluding that there was no redelivery of the lambs, the order for judgment *non obstante* should not be reversed, if for some other valid reason there should be judgment in defendant's favor. Defendant contends that the action was barred by the statute of limitations. The summons was served on February 23, 1927, three days before the expiration of six years. But defendant argues that plaintiff sought and obtained leave to serve an amended complaint long after the statute had run, and that the amended complaint states a new and different cause of action. Were this true, there should be an affirmance of the order. We do not think the action accrued on February 15, 1921. No doubt plaintiff could then have tendered the lambs at Yegan station. But he delayed because defendant so desired. However, on the 26th of February, 1921, the lambs were at the station and were received; then and not till then did the action for the amount due under the contract accrue. The original complaint alleged a certain amount due plaintiff on an alleged contract with defendant to feed and care for certain lambs. We have no doubt that under that complaint all the evidence introduced by plaintiff under the amended complaint would have been admissible. The amended complaint is for caring for and feeding the identical lambs. It is more full than the original, makes the signed contract for feeding a part of the pleading, and contains an additional allegation: "That pursuant to instructions from said defendant, delivery of said lambs was delayed until on or about the 26th day of February, 1921." Certainly delivery on that day could have been proved under the original complaint. There is no merit in defendant's contention that the amended complaint stated a new or different cause of action from the one stated in the original complaint. Our own decisions dispose of the proposition adversely to defendant. Bruns v. Schreiber, 48 Minn. 366, 51 N. W. 120; Gilbert v. Gilbert, 120 Minn. 45, 138 N. W. 943; Haack v. Coughlan, 134 Minn. 78, 158 N. W. 908; Edelbrock v. M. St. P. & S. S. M. Ry. Co. 166 Minn. 1, 206 N. W. 945; 4 Dunnell, Minn. Dig. (2 ed. &

Supp. 1932) § 5622; 5 Dunnell, Minn. Dig. (2 ed.) §§ 7706a, 7709a. From other jurisdictions we refer to Mills v. Richardson, 125 Me. 12, 130 A. 353; Armstrong & Latta v. City of Philadelphia, 249 Pa. 39, 94 A. 455, Ann. Cas. 1917B, 1082.

Defendant objected to the introduction of any evidence by plaintiff on the ground that there had been a departure in the reply, in that it admitted that at the time the lambs were delivered for shipment to the market on February 26, 1921, the feeding contract had been assigned to the bank; that it was necessary so to aver in the complaint and that there had been a reassignment to plaintiff before this suit was begun. Even if defendant's objection had merit, it would not justify judgment notwithstanding the verdict. It might be a ground for new trial. But we think there is no merit in defendant's claim. In its answer defendant alleged as one defense that prior to February 1, plaintiff for value had assigned the feeding contract to the Merchants National Bank of Billings. The reply admitted that plaintiff had prior to said date transferred the contract to the bank as collateral security for a loan, which loan had been fully paid before this action was begun. In this there was no departure from the cause of action stated in the amended complaint. James H. Bishop & Co. v. Travis, 51 Minn. 183, 53 N. W. 461, is in point. If plaintiff was the owner of the contract when this action was started, it was immaterial to defendant who had been the owner previous thereto, unless defendant while the ownership of the contract was in another than plaintiff had paid or discharged it. True, defendant pleaded such a defense, but the jury found against it. The reply herein does not constitute a departure within the rule of Trainor v. Worman, 34 Minn. 237, 25 N. W. 401; Boon v. State Ins. Co. 37 Minn. 426, 34 N. W. 902. Defendant also cites Hatch v. Coddington, 32 Minn. 92, 19 N. W. 393, but that case is clearly against its contentions. Moore Bros. Glass Co. v. Drevet Mfg. Co. (C. C.) 154 F. 737, 738, and Kolze v. Hoadley, 200 U. S. 76, 82, 26 S. Ct. 220, 50 L. ed. 377, also relied on by defendant, were decided upon an act of congress which provides that no circuit or district court "shall have cognizance of any suit  *  *  *  to recover the contents of any promissory note

or chose in action in favor of any assignee, or of any subsequent holder, * * * unless such suit might have been prosecuted in such court to recover the said contents, if no assignment or transfer had been made." Where suit is brought in the courts mentioned on the ground of diversity of citizenship, the assignments, if any, are necessary to be set out in the complaint or bill to show the diversity so as to give jurisdiction under that act.

As above noted, defendant claimed a settlement of the cause of action with the bank while it held the contract as collateral security. The jury found against defendant on the alleged settlements both on the $18,000 and on the $28,000 O'Donnell notes. We entertain no doubt that the evidence fully warranted the jury so to find.

That defendant has taken advantage of every technicality to delay or defeat payment of a just debt is obvious from not only this record but from the records in the former appeals first above referred to. We say a just debt; for it has never been suggested that plaintiff did not in every respect perform his part of the contract. He had the lambs ready for delivery on the date fixed. Defendant was not then prepared to take them. But the jury correctly found that it took them 11 days later, at which time defendant should have paid the stipulated price. It was defendant's misfortune that the market was against it at that time. By its officer, in charge of the transaction here involved, it at the time conceded that the loss resulting from the venture was its loss. Apart from the alleged settlement, defendant has paid nothing except the proceeds from the marketing of the lambs. For the amount so derived plaintiff gave defendant credit in this action. Had this action been brought to recover damages on the theory that defendant refused to accept delivery of the lambs, the verdict would have been in all probability no less. For it is uncontroverted that all parties interested, plaintiff, defendant, and the bank, strove to obtain the highest market price for the lambs.

The order granting judgment notwithstanding the verdict is reversed, and the verdicts are reinstated.