Decided 3 June, 1902.

**REYNOLDS v. SCRIBER.**

[69 Pac. 48.]

STATUTE OF FRAUDS—PART PERFORMANCE.

I. To constitute such a part performance of a parol contract for the sale of personal property at a price of more than $50 as to take the transaction from under the inhibition of the statute of frauds (Hill's Ann. Laws, § 785, subd. 5), the acts relied upon must have reference to the contract, and have been done solely with a view to its performance; acts preliminary or ancillary to the agreement are not sufficient. This case illustrates this rule: Plaintiff was president and business manager of a corporation, and the owner of a large amount of stock, including several shares of treasury stock. Defendant agrees to purchase plaintiff's entire holding, plaintiff agreeing to surrender the treasury stock for cancellation on repayment to him by the corporation of the amount paid therefor. Plaintiff's certificates of stock, and two notes against plaintiff, which defendant had agreed to take up and deliver to plaintiff as part of the consideration, and which had actually been purchased by defendant, were turned over to an attorney to enable him to reduce the contract to writing, but not for the purpose of having either notes or stock delivered to plaintiff or defendant. Plaintiff resigned as officer of the corporation, and testified that such action was in reliance on defendant's promise to complete the contract, and that his acquiescence in a resolution canceling his treasury stock was for the same reason, while defendant's evidence was to the effect that plaintiff's resignation was because of dissatisfaction with

his conduct of the business, and that the treasury stock was canceled because illegally issued. *Held,* that the delivery of the stock and notes for the purpose for which they were delivered, and plaintiff's resignation, and acquiescence in the cancellation of the stock, under the conflicting evidence as to the cause thereof, did not constitute a part performance of the contract, removing it from the operation of the statute of frauds, and entitling plaintiff to specific performance.

FRAUDULENT INTENT NO SUBSTITUTE FOR PART PERFORMANCE.

2. The fact that defendant's motives may have been fraudulent, or that his action has inflicted a wrong on plaintiff, is not ground for the interposition of equity, in the absence of part performance.

From Union: RORERT EAKIN, Judge.

This is a suit by J. E. Reynolds against J. W. Scriber to enforce the specific performance of a contract for the purchase of personal property. On March 10, 1900, these parties were stockholders in the Union County Alliance Flouring Mill Co., a corporation with a capital stock of $25,000, divided into 2,500 shares, of the par value of $10 each. The plaintiff owned 1,218 shares acquired by subscription, and claimed to own 70 shares of treasury stock, and was president and business manager of the corporation, at a salary of $100 a month. The defendant was the owner of 80 shares in his own right, and had contracted for the purchase of 735 additional shares. On the day named, the plaintiff entered into negotiations with defendant for the sale of the 1,218 shares, and the surrender for cancellation of the treasury stock, which finally resulted in an offer by the plaintiff to sell the 1,218 shares for $6,850, and the acceptance thereof by the defendant; the plaintiff agreeing to surrender the 70 shares for cancellation upon the repayment to him by the company of $490, the amount claimed to have been paid therefor. In payment for the shares so contracted for, the defendant was to take up and deliver to the plaintiff two notes executed by him and held by one McKinnis, amounting in the aggregate to $2,735.26, and to pay the remainder in installments. After some further negotiations, the parties went to the office of Mr. Slater, an attorney at La Grande, for the purpose of having the contract reduced to writing, and, although one was prepared, it was never exe-

cuted. To enable Slater to prepare the necessary papers, the certificates of stock held by the plaintiff, and also the Mc-Kinnis notes, which in the mean time had been purchased by and assigned to the defendant, were delivered to him. About the same time the plaintiff and defendant called at the La Grande National Bank, to which the mill company was indebted in the sum of about $13,000, and, as the evidence tends to show, upon the representation of the defendant that he had purchased the plaintiff's stock in the company the bank permitted him to take up the indebtedness held by it against the corporation. Thereafter, and up to the 20th, there seem to have been some negotiations between the parties looking to the consummation of the contract, but without avail. On the 20th, at a meeting of the board of directors of the mill company, of which the defendant was not a member, however, a resolution was adopted directing the payment to the plaintiff of the amount alleged by him to have been advanced in payment of the treasury stock, and for the cancellation thereof. The plaintiff at the same time resigned as president and manager, on an assurance, as he claims, from the defendant, that he would consummate the contract and purchase the stock, which he subsequently refused to do. The next day the plaintiff executed, in form, a proper assignment of the certificates of stock to the defendant, which he tendered to him, and, upon his refusal to accept them, this suit was brought to enforce a specific performance of the contract.    AFFIRMED.

For appellant there was a brief over the names of *Thos. H. Crawford* and *C. H. Finn,* with an oral argument by *Mr. Crawford.*

For respondent there was a brief and an oral argument by *Mr. J. D. Slater.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. There is some controversy in the testimony, and it is somewhat doubtful whether the contract is so clearly and unmistakably proven as to enable a court of equity to enforce its specific perfomance; but, waiving that point, we are of the opinion that it is void under the statute of frauds, and cannot be enforced for that reason. The contract rests entirely in parol, but it is sought to take it out of the statute on the ground of part performance. It is a familiar rule that where a parol agreement has been so far executed by one party, with the assent and acquiescence of the other, that it would amount to a fraud to allow the latter to repudiate it and shelter himself under the provisions of the statute, a court of equity will interfere and defeat or prevent the fraud by compelling its specific performance: 2 Story, Eq. Jur. (13 ed.) § 759; Browne, Stat. Frauds, § 448b. To constitute a part performance, however, within the meaning of this rule, the acts relied upon for that purpose must have reference to the contract, and clearly appear to have been done solely with a view to its performance. Acts merely preliminary or ancillary to the agreement, such as delivering an abstract of title, giving directions for a conveyance, the preparation of the agreement, making valuations, and other like acts, are not sufficient: 2 Story, Eq. Jur. (13 ed.) § 762; Waterman, Spec. Perf. § 262. Whatever was done must have been done under the contract, and in part performance of its terms, and should tend to show not only that there had been an agreement, but throw some light upon its nature, so that neither the fact of the contract nor its execution rests solely upon parol evidence. Now, there is no evidence in this case of such a part performance of the contract sought to be enforced as will take it out of the statute. It is urged that the delivery of the certificates of stock and the McKinnis notes to Slater was sufficient for that purpose. But the evidence clearly shows that they were handed to him for the purpose of enabling him to draw up the necessary contracts and papers, and were not intended in any way as in

execution or performance of its terms. The certificates of stock were not delivered to or accepted by the defendant, nor did he at any time assert any right thereto. The plaintiff himself testifies that he did not intend that the stock should be delivered to the defendant until the McKinnis notes were delivered to him, and the balance due on the purchase price of the stock secured, so that there is no room, under the testimony, for the contention that the delivery of the certificates of stock and the McKinnis notes to Slater was in part performance of the contract.

It is also contended that the resolution of the directors of the mill company canceling the treasury stock, and the resignation of the plaintiff as president and manager of the corporation, are a sufficient performance of the agreement to take it out of the statute; but the evidence does not show that such action in either case was taken solely in pursuance of the terms of the contract, or with the actual or constructive assent of the defendant as part performance thereof. There is a sharp controversy in the testimony as to why the resignation took place, and how the resolution came to be adopted. The plaintiff says that he resigned because of a promise made at the time by the defendant to complete the contract, and that the resolution canceling the treasury stock was acquiesced in by him for the same reason. The defendant, however, has an entirely different version of the transaction. His testimony is to the effect that neither the resignation nor resolution had anything whatever to do with the contract between the plaintiff and himself, but the resignation was brought about by the dissatisfaction of the board of directors with the plaintiff's management of the business, and the treasury stock was canceled because it had been illegally and unlawfully issued. It is apparent, therefore, that the resignation of the defendant and the cancellation of the treasury stock are not sufficient, under the testimony, to authorize a court of equity to enforce a void contract for the purchase by defendant of plaintiff's stock in the corporation. It is true that the statute referred to was enacted for the purpose of preventing fraud, and therefore cannot be

made available in aid of fraud; but a parol agreement for the sale of personal property at a price not less than $50 is as void in equity as at law, unless the buyer accept and receive some part of such property, or pay at the time some part of the purchase money: Hill's Ann. Laws, § 785, subd. 5. It is only when there has been such a part performance of a contract void under the statute as would enable the defendant to perpetrate a fraud upon the plaintiff unless it is specifically enforced that a court of equity will enforce its performance.

2. The mere fact that one party refuses to perform the terms of his contract, however fraudulent may be his motives, or however great a wrong it may inflict upon the other, is no ground in itself for the interposition of a court of equity. This principle disposes of the argument based on the act of the defendant in acquiring an assignment of the indebtedness to the La Grande National Bank from the mill company, and also of the motion to vacate the decree and for leave to file a supplemental bill.

We are of the opinion, therefore, that under the law and the facts in this case the decree of the court below should be affirmed, and it is so ordered.        AFFIRMED.

Decided 3 June, 1902.