CASSIDY *v.* KRAFT-PHENIX CHEESE CORP.

1. CONFLICT OF LAWS—SIMILAR LAWS—STATUTE OF FRAUDS.
    In determining case which involves the statute of frauds of either the place of contracting, performance or forum, no decision is necessary as to which law governs where they are all similar (Cahill's Consol. Laws of N. Y., chap. 42, § 85; California Civil Code, § 1724; Michigan Comp. Laws 1929, §§ 9443, 13417).

2. FRAUDS, STATUTE OF—EXECUTORY CONTRACT—SALES.
    Executory oral contract whereby plaintiff would acquire the exclusive manufacturing and selling rights of defendant's product for certain territory and which provided for a purchase by plaintiff from defendant of merchandise very much in excess of amount which rendered contract unenforceable under the statute of frauds *held*, not severable and unenforceable under the statute of frauds (Comp. Laws 1929, §§ 9443, 13417).

3. SAME—ENFORCEABILITY OF UNSEVERABLE CONTRACT.
    If one provision of a contract which cannot be severed is invalid under the statute of frauds the whole contract is unenforceable under it (Comp. Laws 1929, §§ 9443, 13417).

4. SAME—PURCHASE OF CHEESE—PARTIAL PERFORMANCE—PRELIMINARY EFFORTS.
    Alleged oral contract whereby plaintiff agreed to purchase 5,000 pounds of cheese per month at 36 cents a pound is clearly unenforceable under the statute of frauds, hence trial court's holding that as a matter of law no recovery could be had for its breach was proper, notwithstanding allegations of partial performance where such consisted in making preparations that were preliminary to performance or commencement of business (Comp. Laws 1929, §§ 9443, 13417).

5. CONTRACTS — CONSIDERATION — PARTIAL PERFORMANCE — PRELIMINARY ACTIVITIES.
    Preliminary activities of plaintiff who sought damages for breach of alleged oral contract for exclusive representation of

defendant for manufacture and sale of its patented and trade-marked cheese product in a given territory and agreement to purchase 5,000 pounds of cheese per month at 36 cents a pound *held*, to constitute neither consideration in part nor part performance of alleged contract.

6. SALES—STATUTE OF FRAUDS—PERSONAL PROPERTY.

The payment required by the statute of frauds is an unconditional transfer of money or property, from vendee to vendor, and unconditional acceptance of the same by the vendor, in discharge, *pro tanto*, of the purchase price (Comp. Laws 1929, §§ 9443, 13417).

7. FRAUDS, STATUTE OF—BREACH OF CONTRACT—DAMAGES.

Recovery of damages for breach of alleged oral contract and recovery of money claimed to be due from defendant to plaintiff under it *held*, properly denied as a matter of law where alleged contract was clearly unenforceable under the statute of frauds (Comp. Laws 1929, §§ 9443, 13417).

8. FRAUD—EXECUTION OF WRITTEN CONTRACT—STATUTE OF FRAUDS.

An action for fraud cannot be maintained if it is predicated upon defendant's failure or refusal to execute a written contract embodying an agreement which if resting in parol would be within the statute of frauds (Comp. Laws 1929, §§ 9443, 13417).

9. FRAUDS, STATUTE OF—UNENFORCEABLE CONTRACTS—FRAUD.

The prohibition against bringing any action on an oral contract within the statute of frauds includes actions based indirectly on the contract, as an action for damages for its breach is in effect one for its enforcement, and neither can an action for damages be maintained on the ground of fraud in refusing performance even though defendant at the time of making an oral contract may have no intention of performing it (Comp. Laws 1929, §§ 9443, 13417).

10. SAME—FORM OF ACTION IMMATERIAL—IGNORANCE OF THE LAW.

Whatever the form of an action at law may be, if the proof of a promise or contract, void by the statute of frauds, is essential to maintain it, there can be no recovery and it is immaterial that a party was ignorant of the law or that he confided in the promise of another and acted upon it to his disadvantage (Comp. Laws 1929, §§ 9443, 13417).

11. EVIDENCE—PRESUMPTIONS OF KNOWLEDGE—LAW.

In every case where parties deal at arm's length each is supposed to know the law.

12. DAMAGES—TORTS—MEASURE OF DAMAGES.

> The damage recoverable in consequence of a tort is only such as is the direct result of the tort, i. e., damage of which the tort is the proximate cause.

13. FRAUDS, STATUTE OF—INDIRECT ENFORCEMENT.

> Theory of case that plaintiff was defrauded by defendant in latter's refusal to enter into written contract as to matters otherwise unenforceable under the statute of frauds as it had orally agreed to do would avail plaintiff nothing where damage plaintiff suffered was deprivation of possession of a written contract and to afford relief thereunder would indirectly nullify the statute of frauds (Comp. Laws 1929, §§ 9443, 13417).

14. STATUTES—LEGISLATURE—COURTS—CONSTITUTIONAL LAW.

> The wisdom of the statute of frauds is a matter within the control of the legislature, not the courts; and it is the duty of the courts to enforce and adhere to the statutes in so far as they are not unconstitutional (Comp. Laws 1929, §§ 9443, 13417).

15. FRAUDS, STATUTE OF—PLEADING—FRAUD—PRELIMINARY ACTIVITIES.

> Portion of declaration wherein plaintiff claimed damages for conspiracy upon part of defendant corporation and its agents to defraud plaintiff by inducing him to enter into an oral contract as to matters within the statute of frauds and thereby reap the benefits of his preliminary activities in reference to business involved *held*, not to have stated a cause of action upon which recovery may be had, hence should have been dismissed (Comp. Laws 1929, §§ 9443, 13417).

Appeal from Wayne; Chenot (James E.), J. Submitted October 19, 1937. (Docket No. 68, Calendar No. 39,547.) Decided June 30, 1938.

Action by Charles F. Cassidy against Kraft-Phenix Cheese Corporation, a Delaware corporation, for damages for alleged breach of contract. Plaintiff reviews order dismissing count one of declaration and paragraph four of count three by appeal in nature of certiorari. Defendant filed a cross-appeal in nature of certiorari. Remanded for dismissal of entire declaration.

*Rich & Willis* (*Marvin M. Peck,* of counsel), for plaintiff.

*Bodman, Longley, Bogle, Middleton & Farley,* for defendant.

NORTH, J.   Leave having been granted, plaintiff has appealed from an order of the circuit judge dismissing plaintiff's amended declaration in part. Defendant has taken a cross-appeal, claiming that the court should have dismissed the declaration *in toto.*

The declaration contains three counts. The circuit judge dismissed the first count and paragraph four of the third count. The first count is for breach of an alleged oral agreement entered into on the 13th day of November, 1935, in the city of New York. It is alleged that the defendant, a Delaware corporation, orally agreed to grant to plaintiff the exclusive manufacturing and selling rights for certain territory in the State of California of a product known as O-Ke-Doke. The contract period was for six months "after commencement of business," and for an additional period of six months at plaintiff's option, provided he purchased from the defendant a minimum of 5,000 pounds of cheese per month. Defendant has a trade-mark on the name "O-Ke-Doke" and also patents covering the manufacturing process and equipment necessary to produce this product, which is made by applying to popcorn a coating having a cheese flavor. Plaintiff alleges that in accordance with the terms of the oral agreement he prepared to manufacture and sell this product in the specified territory, and to accomplish this purpose he agreed to purchase from defendant certain materials required in the process of manufacturing the product, and he was to establish a manufacturing plant in the

city of Los Angeles, perfect sales agencies and in general promote the sale of O-Ke-Doke in the designated territory. Plaintiff alleges that with the knowledge and consent of defendant he expended substantial sums of money in working out the preliminary details, which included expenditure of time, traveling expenses, investigations of the possibilities of the territory, organizing a company for the manufacture of the product, renting property to be used for that purpose in Los Angeles, and establishing sales agencies. It is further set forth in the first count that:

"This plaintiff was to have for a period of six months the exclusive right (in the contract territory) of sale and manufacture of a certain product commonly known as O-Ke-Doke, * * * that it was provided in the terms of the said oral agreement that during the continuance of the said agreement and after the commencement of business, the plaintiff was obligated to purchase of the defendant a minimum of 5,000 pounds of cheese per month; that it was understood and agreed between the parties that the plaintiff was to pay to the defendant the sum of 36 cents per pound for the said cheese; that it was understood between the said parties that the said amount of cheese, upon being prepared, would make up 5,000 cans of O-Ke-Doke which this plaintiff was to sell to the general public at a price of $1 per can. * * * And it was further provided by the said agreement that the said contract was to continue in effect for a period of six months and would be subject to renewal at the option of the plaintiff."

Paragraph four of count three, also dismissed by the circuit judge, alleges defendant was indebted to plaintiff in the sum of $25,000 for money due from defendant to plaintiff on the oral agreement hereinbefore outlined.

Defendant's motion to dismiss this portion of the declaration was based upon the contention that the oral agreement claimed by plaintiff to have been entered into in the State of New York was for the sale of goods of a value of $100 and upwards and, there having been neither partial payment nor partial delivery of the goods or any note or memorandum thereof in writing signed by the party to be charged or his agent, the agreement was unenforceable both under the statute of frauds of this State (2 Comp. Laws 1929, § 9443 [Stat. Ann. § 19.244]) and like statutory provisions in the State of New York (Cahill's Consol. Laws of New York, chap. 42, § 85). Further that such sale was of goods of a value in excess of $500 and, therefore, was unenforceable because of similar statutory provisions in the State of California (California Civil Code, § 1724). Also that the alleged oral contract was one not to be performed within one year and, therefore, in violation of the statute of frauds of this State (3 Comp. Laws 1929, § 13417 [Stat. Ann. § 26.922]) and of similar statutory provisions in New York (Cahill's Consol. Laws of New York, chap. 42, § 31) and in California (California Civil Code, § 1624). Because of the similarity of the relevant portions of the statutes of frauds in Michigan, New York and California, it is of no consequence in decision of this case which law governs.

Appellant asserts that the order of the circuit judge sustaining in part defendant's motion to dismiss was erroneous because the contract was in fact one by defendant for the employment of plaintiff in the nature of an agency, and therefore not within the statute of frauds. We think it is clear this position cannot be sustained. This contract provided for a purchase by plaintiff from defendant of mer-

chandise very much in excess of the amount which rendered the contract unenforceable under the statute of frauds. The contract was wholly executory, and its interrelated provisions must stand or fall together. The noted provisions of the contract are not severable. If one is invalid the contract is unenforceable. *Thorbahn* v. *Walker's Estate,* 269 Mich. 586. Plaintiff is bound by the allegations in his declaration wherein it is stated "plaintiff was obligated to purchase of the defendant a minimum of 5,000 pounds of cheese per month" at 36 cents per pound. This provision was clearly within the statute of frauds. The holding of the circuit judge that as a matter of law the alleged oral contract was unenforceable and therefore plaintiff could not recover for its breach must be sustained.

In arriving at the above conclusion we are mindful of plaintiff's contention that the alleged oral contract has been partially performed by plaintiff and, therefore, should be held valid. Here again plaintiff's position is not tenable because the declaration, fairly construed, discloses merely that plaintiff did some things which were preliminary to the performance or execution of the contract, not that he did them in performance of the contract. In the first count of the declaration plaintiff sets up that "he undertook to make proper preparations for the commencement of business; that as part of said preparations it was necessary that he incur large expenses in traveling;" and further in the same count he alleges "and before the commencement of business" defendant notified plaintiff that it would not carry out the terms of the alleged oral contract, "and instructed your plaintiff to discontinue any further efforts to commence business." Thus it appears from the declaration that the acts which plaintiff now attempts to assert were partial performance of

the contract, were nothing more than activities preliminary to any performance or partial performance under the contract itself. What plaintiff did "before the commencement of business" contemplated by the alleged agreement constituted neither consideration in part for the alleged contract nor part performance thereof.

"The payment required by the statute is the usual payment, as the term is commonly understood, whereby the vendee unconditionally transfers money or property to the vendor which the vendor unconditionally accepts in discharge, *pro tanto*, of the purchase price." *Leonard* v. *Roth*, 164 Mich. 646.

In a recent case having a somewhat similar factual background, Chief Justice Wiest, speaking for the court, said:

"The action of plaintiff in giving up the practice of his profession was but an incident necessary on his part to place himself in a position to accept and perform the contract and not a price or consideration paid to defendant for the contract of employment." *Adolph* v. *Cookware Co. of America*, 283 Mich. 561.

See, also, *Coleman* v. *St. Paul & Tacoma Lumber Co.*, 110 Wash. 259 (188 Pac. 532); *Hewson* v. *Peterman Manfg. Co.*, 76 Wash. 600 (136 Pac. 1158, 51 L. R. A. [N. S.] 398, Ann. Cas. 1915D, 346); *Reynolds* v. *Scriber*, 41 Ore. 407 (69 Pac. 48). As noted above, the circuit judge was right in dismissing the declaration in so far as plaintiff sought to recover damages for the breach of an alleged oral contract, or to recover money claimed to be due from defendant to plaintiff under the alleged oral contract.

As to defendant's cross-appeal from the refusal of the circuit judge to dismiss count two of the declaration and the remaining portion of count three (so-

called common counts), the following appears from the record. In the order made by the court upon defendant's motion to dismiss, it is stated:

"Counsel for the plaintiff having elected in open court and his written brief filed herein to treat count two of his said declaration as so amended as a count in tort for fraud and not in assumpsit upon contract, * * * and the court further having decided that count two of said declaration is in tort for fraud and not in assumpsit upon the contract therein alleged, * * * it is further ordered that, as to count two and the remaining paragraphs of count three of plaintiff's declaration as so amended, the said motion of the defendant herein is denied."

Defendant as cross-appellant asserts that the trial court erred in holding count two of plaintiff's declaration as amended states "a cause of action in tort for fraud." Of this count plaintiff in his brief states:

"Count two of the said declaration declares upon a conspiracy on the part of the defendant and its duly authorized agents to defraud the plaintiff through inducing the plaintiff to enter into the contract hereinabove described while never intending to carry out the terms of said contract, so as to reap the benefits of plaintiff's investigation as to the manufacturing and selling possibilities of the O-Ke-Doke cheese flavor in and about the State of California without cost to the defendant. * * * Except as here indicated, the said count two finds no basis in contract for its cause of action."

It may be noted that nowhere in count two is it alleged that plaintiff believed and relied on defendant's false representations and that he was deceived thereby and sustained damages because thereof.

But passing this defect in pleading since it has not been noted on this appeal and also because it may be cured by amendment, and giving count two the construction which plaintiff places upon it, still we are confronted with defendant's contention that an action for fraud cannot be maintained if it is predicated upon defendant's failure or refusal to execute a written contract embodying an agreement which if resting in parol would be within the statute of frauds. We think this contention is sound.

"Indirect Enforcement of Contract.—The provision (in the statute of frauds) prohibiting any action to be brought on an oral contract within the statute includes actions based indirectly on the contract. An action for damages for its breach is in effect one for its enforcement and cannot be maintained. * * * So an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it. In adjusting the rights arising out of a part performance by one party nothing can be recovered by him for the loss of the bargain." 25 R. C. L. p. 691.

In a case involving the question under consideration, an Ohio court has said:

"It is further claimed that a tort was committed, and that the defendants never intended to execute the lease. The addition of that statement in the amended petition does not change the cause of action. If no cause of action existed, the addition of the allegation that it was a fraud, and that the defendants never intended to execute the lease, does not, in the absence of other allegations, take the case out of the statute of frauds." *Ossage* v. *Foley,* 20 Ohio App. 16 (153 N. E. 117).

Touching the question of the breach of an oral agreement of this character constituting a ground for recovery in tort, the supreme court of Massachusetts has held:

"To term this a tort would be to confound a cause of action in contract with one in tort, and would violate the policy of the statute of frauds by relieving a party from the necessity of observing those statutory formalities which are necessary to the validity of certain executory contracts." *Dawe* v. *Morris*, 149 Mass. 188 (21 N. E. 313, 4 L. R. A. 158, 14 Am. St. Rep. 404).

The New York court of appeals has commented so pertinently on this phase of the law that we quote somewhat at length from its opinion:

"The contract proved, on the part of the plaintiff, was a parol contract by the defendant assuming to act as agent for the College of Physicians and Surgeons, for the leasing to the plaintiff, for the term of two years, of a store to be occupied as a drug store.

"If the defendant had possessed full authority to lease the premises, or if the contract had been made directly with the trustees of the corporation, it would have been without legal force or validity.

"The statute declares that a contract for the leasing of lands for a longer period than one year, unless the contract or some note or memorandum thereof, expressing the consideration, be in writing, shall be void. (2 R. S., 135, § 8).

"A contract void by the statute is void for all purposes. It confers no right and creates no obligation as between the parties to it; and no claim can be founded upon it as against third persons.

"It cannot be enforced directly or indirectly. The plain intent of the statute is that no person shall be subjected to any liability upon (such) an agreement.

"Whatever the form of the action at law may be, if the proof of a promise or contract, void by the statute, is essential to maintain it, there can be no recovery. \* \* \*

"That a party was ignorant of the law, or that he confided in the promise of another, and acted upon it to his disadvantage, has never been held to be an answer to the statute.

"There is no contract from the violation of which damages, in the legal sense, can arise, where the agreement proved is within the statute. (*Cagger* v. *Lansing,* 43 N. Y. 550; *Levy* v. *Brush,* 45 N. Y. 589).

"There may be moral wrong in refusing to perform such a contract; but the policy of the statute was protection against false claims, supported by perjury; and the hardship of a particular case should not lead to a decision which would disturb the principle upon which the statute is founded." *Dung* v. *Parker,* 52 N. Y. 494.

Recently an inferior court in the State of New York has said:

"It is urged that the statute of frauds may not be invoked to perpetrate a fraud. But this familiar maxim is much too vague in its meaning and implications to be useful in the solution of actual controversies. *Maddison* v. *Alderson,* 42 L. J. Q. B. 737 (L. R. 8 App. Cas. 467, 49 L. T. 303). It is not a fraud to refuse to perform an unenforceable agreement. *Levy* v. *Brush,* 45 N. Y. 589." *Connell* v. *Slater,* (1930) 137 Misc. 249 (243 N. Y. Supp. 25).

That the administration of this phase of statutory law has been a troublesome matter to the courts, but nonetheless that it is their duty to administer the statutory law as it exists, appears from a decision of the supreme court of Maryland rendered more than a century ago.

"For that violation by Watson of his agreement (an oral agreement to transfer title to land) this suit was brought, and he rests his defense on the statute of frauds, which probably generates as many frauds as it prevents. * * * yet as the case is presented, we are constrained to sustain that defense. * * * If the plaintiff could be permitted to recover on this agreement, there is no case in which the statute could prevail, and it would become a dead letter. * * *

"But they (the courts) cannot entertain actions upon verbal contracts within the statute, on the ground of fraud, in refusing to perform them; if they could, it would be to permit a plaintiff, in the shape of an action on the contract, to recover in damages, not for the breach of the contract as such, but for a fraud subsequently conceived and on which the action was not founded (as is attempted in this case), which would be to annul the statute in relation to such contract." *Lamborn* v. *Watson,* (1824) 6 Harr. & J. (Md.) 252 (14 Am. Dec. 275).

In every case where parties deal at arm's length each is supposed to know the law. In the instant case plaintiff was bound to know that he could not consummate a valid contract, such as he asserts in this case, except it was reduced to writing or in some other manner compliance with the statute of frauds was accomplished. Plaintiff could not be defrauded except he was deceived. Hence he must be held bound by the knowledge that he never consummated an enforceable contract with defendant. We are mindful it is plaintiff's theory that he can rely upon defendant's alleged oral contract to enter into a written contract, and that the damage sought is claimed to be such as resulted from defendant's refusal to consummate the written contract. What is the result of this theory?

The damage recoverable in consequence of a tort is only such as is the direct result of the tort, *i. e.,*

damage of which the tort is the proximate cause. *McLane, Swift & Co.* v. *Botsford Elevator Co.,* 136 Mich. 664 (112 Am. St. Rep. 384, 16 Am. Neg. Rep. 390) ; *Van Keulen & Winchester Lumber Co.* v. *Railroad Co.,* 222 Mich. 682.  The only direct consequence (damage) to plaintiff resulting from defendant's refusal to enter into a written contract was to deprive plaintiff of possession of such written contract.  But in and of itself possession of such written contract would profit plaintiff nothing.  True, it would enable him to maintain a suit for its breach, but by this indirect method the statute of frauds would be nullified. In effect the statute would be repealed by the courts and in so acting the courts in this State would be guilty of an unconstitutional invasion of legislative powers.  The wisdom of the statutory provision is a matter within the control of the legislative branch of our State government, not in the judicial branch; and it is the duty of courts to enforce and adhere to the statutory law of the State as promulgated by the legislature in so far as such laws are not in violation of the Constitution.

There are few decisions directly in point and some of these few are not in accord with those hereinbefore noted.  See comment note, 104 A. L. R. 1420. Of the decisions adhering to an opposite view perhaps *Nanos* v. *Harrison,* 97 Conn. 529 (117 Atl. 803), is the most outstanding.  But it seems to appear that decision in the Connecticut case was largely influenced, not by an application and enforcement of the statute, but rather by a desire to avoid a harsh result. The court said:

"If the action will not lie because this contract of lease was parol, the statute of frauds, which was intended to prevent fraud, will serve as an aid in helping to perpetrate a fraud."

The argument might be pertinent if made to the legislature to secure a repeal of the law, but it does not justify the conclusion that courts should fail to recognize and enforce the statute so long as it constitutes a part of the law. Nor should courts of law do by indirection that which cannot be done directly except in plain violation of a statute.

From our holding, as above set forth, it follows that plaintiff has not stated in his declaration a cause of action on which he can recover. The circuit judge should have granted defendant's motion to dismiss. The case will be remanded for entry of an order in accord herewith. Costs of this court to defendant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred. FEAD, J., took no part in this decision.